IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CVB, Inc.,<br>Plaintiff,<br>v.<br>USA DEBT RECOVERY SOLUTIONS, et al.,<br>Defendants. | MEMORANDUM DECISION AND ORDER GRANTING MOTION TO REMAND<br>Case 1:26-cv-17-TS-DBP<br>District Judge Ted Stewart<br>Magistrate Judge Dustin B. Pead |

This matter is before the Court on Plaintiff CVB Inc.'s Motion to Remand the case to State Court.[1] For the reasons discussed herein, the Court will grant the Motion and will remand this matter to the First Judicial District of Utah where it was originally filed.

## I. BACKGROUND

Plaintiff filed its Complaint in state court on September 14, 2025, naming USA Debt Recovery Services ("Defendant" or "DRS") and numerous foreign entities as defendants. On February 9, 2026, DRS removed the case to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.[2] Defendant represented that no other defendants named in the Complaint had been served and, accordingly, their consent to the removal was not yet required. At the time of this Order, no other defendants named in the Complaint have appeared.

On March 11, 2026, Plaintiff filed a timely Motion to Remand to State Court.[3] Defendant filed its Response opposing the Motion on March 27, 2026. Thereafter, the parties were engaged

---

[1] Docket No. 7.

[2] Docket No. 1.

[3] *See* 28 U.S.C. § 1447(c) (allowing 30 days to challenged removal based on a defect in the removal procedure.).

in settlement discussions. On July 21, 2026, Plaintiff filed a stipulated Motion for Extension of Time to file its reply.[4] Plaintiff represented that settlement discussions, while still open, had reached an impasse, and requested that the Court accept their untimely reply to "move the Motion toward decision."[5] The motion was granted and Plaintiff filed its Reply on July 29, 2026.[6] The matter is now ripe for determination.

## II. DISCUSSION

Plaintiff seeks to have this matter remanded to state court for Defendant's purported failure to timely file for removal. "[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."[7] However, "[i]t is well-established that statutes conferring jurisdiction upon the federal courts, and particularly removal statutes, are to be narrowly construed in light of our constitutional role as limited tribunals."[8]

In considering a motion to remand, the burden is on the party seeking removal to show that the removal is proper,[9] and "all doubts are to be resolved against removal."[10] An untimely

---

[4] Docket No. 16.

[5] *Id.* ¶ 4.

[6] Docket No. 19.

[7] 28 U.S.C. § 1441(a).

[8] *Pritchett v. Office Depot, Inc.*, 420 F.3d 1090, 1094–95 (10th Cir. 2005).

[9] *May v. Bd. of Cnty. Comm'rs for Cibola Cnty.*, 945 F. Supp. 2d 1277, 1291–92 (D.N.M. 2013) (citing *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002)).

[10] *Fajen v. Found. Reserve Ins. Co.*, 683 F.2d 331, 333 (10th Cir. 1982).

removal notice constitutes a "defect in the removal procedure" under 28 U.S.C. § 1447(c)[11] and therefore requires that the removed case be remanded to the court where it was originally filed.[12]

28 U.S.C. § 1446, which dictates the procedure for removal of civil actions, states that a notice of removal:

> shall be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.[13]

In *Murphy Brothers v. Michetti Pipe Stringing, Inc.*,[14] the Supreme Court corrected what it determined to be an erroneous interpretation of § 1446's "through service or otherwise" language as not requiring formal service. The Court explained:

> An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process. Accordingly, we hold that a named defendant's time to remove is triggered by simultaneous service of the summons and complaint, or receipt of the complaint, "through service or otherwise," after and apart from service of the summons, but not by mere receipt of the complaint unattended by any formal service.[15]

Plaintiff argues that, while this holding requires a "defendant's receipt of both the summons and the complaint through an act of service," it does not require "a later judicial determination that service was perfected in every particular."[16]

---

[11] *McShares, Inc. v. Barry*, 979 F. Supp. 1338, 1341 (D. Kan. 1997) (quoting *Page v. City of Southfield*, 45 F.3d 128, 131 (6th Cir. 1995)).

[12] *May*, 945 F. Supp. 2d at 1292 (citing *Huffman v. Saul Holdings Ltd. P'ship*, 194 F.3d 1077, 1078 (10th Cir. 1999) ("A removal which does not comply with the express statutory requirements is defective, and the case must be remanded to state court."); *see also Chavez v. Kincaid*, 15 F. Supp. 2d 1118, 1120 (D.N.M. 1998) ("The thirty-day time limitation is mandatory and strictly construed.").

[13] 28 U.S.C. § 1446(b)(1).

[14] 526 U.S. 344 (1999).

[15] *Id.* at 347–48 (emphasis added).

[16] Docket No. 7, at 9.

Plaintiff's interpretation is at odds with numerous courts that have interpreted *Murphy Brothers* as requiring proper service, as dictated by the laws of the court where the defendant was served.[17] By contrast, the Court can find no authority, and Plaintiff has not cited any, supporting Plaintiff's proposition that the Court need not consider whether service was technically correct when determining the timeliness of the removal notice. Accordingly, because this case was initially filed in Utah's First Judicial District, the Court looks to the service of process requirements under Rule 4 of the Utah Rules of Civil Procedure. Notably, Utah courts require "strict compliance" with Rule 4 for effectuating service.[18]

Regarding the service of Defendant in this case, the parties generally agree as follows: Plaintiff filed its Complaint on September 9, 2025, in Utah's First Judicial District Court. On December 10, 2025, a process server placed the Complaint and Summons on the doorstep of Arthur Tretiakov's home in California. Tretiakov is the owner and CEO of DRS. On January 7, 2026, Plaintiff sent the Complaint and Summons to Tretiakov via a FedEx delivery, which he received the following day. On January 16, 2026, Plaintiff filed a Motion to Verify Service Upon

---

[17] *See e.g., Furness v. Mills*, No. 2:12-CV-00256 DN, 2013 WL 3995258, at *4 (D. Utah Aug. 5, 2013), *as corrected* (Aug. 9, 2013) (looking to Utah law to determine if service was effectuated after noting: "In the past, courts have held that formal service was not required to begin the 30–day period. . . . These allowances were abrogated in *Murphy Bros.* . . . where the United States Supreme Court held that formal service was required to trigger the removal period."); *Wallace v. Microsoft Corp.*, 563 F. Supp. 2d 1197, 1199 (D. Kan. 2008), *rev'd on other grounds*, 596 F.3d 703 (10th Cir. 2010) (looking to Kansas law to determine if removal was timely); *Williams v. Connell*, No. 12-Civ.-3593-(SLT)-(VVP), 2017 WL 2829686, at *4 (E.D.N.Y. June 29, 2017) ("It is by now black-letter law that state law determines whether service is complete for the purposes of section 1446. Indeed, in light of *Murphy Brothers*[,]. . . , courts consistently look to state law to determine whether a defendant was 'properly served' when evaluating procedural challenges to a Defendant's removal.").

[18] *Redwood Land Co. v. Kimball*, 433 P.2d 1010, 1010 (Utah 1967); *Jordan Credit Union v. Sullivan*, 2022 UT App 120, ¶ 11, 520 P.3d 929 (rejecting proposition that service was sufficient where it was asserted that "the service . . . satisfie[d] the 'purpose and intent' of rule 4.").

DRS, in which it stated, "[t]he date of delivery of the follow up [FedEx] was January 8, 2026, and we ask the Court to find that DRS/Tretiakov has been served as of that day. This gives DRS until February 9, 2026[,] to file its Answer or responsive pleading."[19] On February 9, 2026, Defendant filed its Notice of Removal.

The parties dispute whether service was first effectuated by the December 10 doorstep delivery or the January 8 FedEx delivery. Defendant argues that the December 10 service was incomplete because it failed to comply with Rule 4(d)(2)(C), which provides for personal service on a business entity such as Defendant:

> by delivering a copy of the summons and complaint to an officer, a managing or general agent, or other agent authorized by appointment or law to receive process and by also mailing a copy of the summons and complaint to the defendant, if the agent is one authorized by statute to receive process and the statute so requires. If no officer or agent can be found within the state, and the defendant has, or advertises or holds itself out as having, a place of business within the state or elsewhere, or does business within this state or elsewhere, then upon the person in charge of the place of business[.]

Defendant first argues that, because "no officer or agent" of Defendant "can be found within the state," service must have been effectuated "upon the person in charge of the place of business." Because Tretiakov's home is not Defendant's "place of business," Defendant argues that service was not effectuated. Plaintiff responds that Rule 4(d)(2)(E) should not be read to *require* service to the person in charge of a place of business if an officer cannot be found within the state but, instead, as an option for service if an officer is not within the state.

---

[19] Docket No. 1, at 2.

When interpreting a statute, Utah courts[20] seek to "evince the true intent and purpose of the Legislature." [21] In so doing, Utah courts: "assume, absent a contrary indication, that the legislature used each term advisedly according to its ordinary and usually accepted meaning[;]" "give effect to omissions in statutory language by presuming all omissions to be purposeful[;]"[22] and construe "each part or section [of a statute] . . . in connection with every other part or section so as to produce a *harmonious whole*."[23] Further, "interpretations are to be avoided which render some part of a provision nonsensical or absurd."[24] Absent ambiguity, "no other interpretive tools are needed."[25]

Applying these tools of construction, the Court finds that the plain language of Rule 4(d)(2)(E) supports Plaintiff's interpretation. First, the language authorizing service "upon the person in charge of place of business" if no officer or agent "can be found" in Utah does not include any compulsory language such as "shall be" or "must be." Likewise, the language authorizing service by delivery to an officer or agent does not include any language suggesting that such delivery is invalid if it occurs outside of Utah. The Court must presume such omissions to be purposeful.

This interpretation is further supported by reading the statute in harmony with other provisions. Rule 4(d), the leading provision, states that service "must be by one of the following

---

[20] *See Ward v. Utah*, 398 F.3d 1239, 1248 (10th Cir. 2005) ("We interpret state laws according to state rules of statutory construction.").

[21] *Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶ 14, 267 P.3d 863 (internal quotation marks and citation omitted).

[22] *Id.*

[23] *State of Utah in Int. of J.M.S. v. J.M.S.*, 2011 UT 75, ¶ 13, 280 P.3d 410 (internal quotation marks and citation omitted).

[24] *Jackson v. Mateus,* 2003 UT 18, ¶ 21, 70 P.3d 78 (internal quotation marks and citation omitted).

[25] *Marion Energy, Inc.*, 2011 UT 50, ¶ 14 (internal quotation marks and citation omitted).

methods," suggesting that any of the enumerated methods to follow, including each of the two methods provided in Rule 4(d)(2)(E), are authorized independently. Further, interpreting the statute as allowing service to an out-of-state person in charge of a place of business, but disallowing service to an out-of-state officer of that same business is borderline nonsensical.

Finally, while the Court did not find any Utah authority that has specifically analyzed or ruled on the above question of interpretation, a footnote in a Utah Supreme Court case cited by Plaintiff explains the place-of-business provision in Rule(4)(d)(2)(E) as a permissive alternative means of service. Specifically, in considering whether an individual was a "managing agent" for purposes of service, the Court noted that Rule 4(d)(2)(E) "*ordinarily* requires a plaintiff to serve process on a corporation" by serving an officer or agent of the corporation.[26] The associated footnote then explains:

> We say "ordinarily" because the rule also provides that if none of the identified officers or agents "can be found within the state, and the defendant has, or advertises or holds itself out as having, a place of business within the state or elsewhere, or does business within this state or elsewhere," then service *may be* had "upon the person in charge of the place of business."[27]

Accordingly, the Court interprets Rule 4(d)(2)(E) to *allow* service to a "person in charge of the place of business" only where an officer of the business cannot be located in Utah and as an alternative to the "ordinary" requirement that service be effectuated on an officer or agent of the corporation.

Defendant next argues process was not effectuated by the December 10 doorstep delivery because Rule 4(d)(2)(E) requires that service to an officer or agent be both delivered and mailed. Again, this argument is not supported by the plain language of the statute. The relevant portion

[26] *Griffin v. Snow Christensen & Martineau*, 2025 UT 16, ¶ 10, 570 P.3d 357 (emphasis added).

[27] *Id.* ¶ 10 n.2 (emphasis added).

of Rule 4(d)(2)(E) states that service is effectuated "by delivering a copy of the summons and complaint to an officer, a managing or general agent, or other agent authorized by appointment or law to receive process *and by also mailing* a copy of the summons and complaint to the defendant, *if the agent is one authorized by statute to receive process and the statute so requires*."[28]

Defendant's interpretation conveniently ignores the conditional statement that plainly requires mailing "if the agent is one authorized by statute to receive process and the statute so requires." The parties do not appear to dispute that Tretiakov, as the owner and CEO of DRS, is an officer and nothing before the Court suggests he is not. An "officer" is distinguished from "an agent . . . authorized by statute to receive process." Notably, even if he were an agent, mailing is only required "where the statute [authorizing service] so requires." Defendant has not identified a separate statute that required the summons and complaint to be mailed. Accordingly, the Court finds that Plaintiff was not required to mail the complaint and summons to effectuate service.

Finally, the parties raise a factual dispute regarding whether Tretiakov actually refused service, which is necessary for the process server's doorstep delivery to be proper. Rule 4(d)(1) provides "if the person to be served refuses to accept a copy of the summons and complaint, service is sufficient if the person serving them states the name of the process and offers to deliver them."

Plaintiff asserts that, on December 10, 2025, the process server arrived at Tretiakov's home to effectuate service, but service was refused. The process server then left the Complaint and Summons on the doorstep, took a photo of it for documentation, and left. In support, Plaintiff attaches the signed Affidavit of Service, which states, "Personal/Individual" service was

[28] Emphasis added.

successful on December 10, 2025, at 4:19 p.m., and describes that, on his third attempt to effectuate service, the process server "[a]nnounced the name and he said no thank you I am refusing the doc[, so he] left it by the door and took a picture."[29] The Affidavit further describes the physical characteristics of the person who refused service and includes a photo of the home and of an envelope on the doorstep. Taken as true, this is sufficient to establish that service was effectuated in compliance with Rule 4 on December 10, 2025. Defendant, however, disputes these facts.

Defendant submitted a declaration to the Court signed with permission on behalf of Tretiakov, which states that "on December 10, 2025[,] at approximately 4:19 [p.m.,] an individual approached my door at my personal residence in Beverly Hills, California . . . . I had no interaction with the process server [and] . . . did not tell him that I would not accept service."[30] The declaration further states that Tretiakov has cameras set up at his home and provides a link to video footage, which shows the process server arriving at the home, delivering an envelope, and leaving without interacting with anyone. The video footage is not date or time stamped, and includes no audio.

The Court is therefore left with competing assertions regarding what occurred on December 10, 2025, at approximately 4:19 p.m. Under Utah law, "[a] return of service, whether by a sheriff, constable, or private process server, is presumptively correct and is prima facie evidence of the facts stated therein."[31] In the face of an "Affidavit of Service" alleging compliance with Rule 4, "the burden . . . shifts to [the defendant] to prove . . . that service was

---

[29] Docket No. 21-1.

[30] Docket No. 13, Ex. A, at 2.

[31] *Express Recovery Servs. v. Davis*, 2012 UT App 296, ¶ 5, 289 P.3d 606.

improper."[32] "Because all process servers are subject to criminal charges for falsifying a return of service, their returns of service . . . can be disproved only by clear and convincing evidence."[33] Significantly, Utah courts have found that "self-serving affidavits [from individuals alleging they were not properly served] do not amount to clear and convincing evidence sufficient to disprove the presumption in favor of the process server's return of service."[34]

Defendant argues that "[i]n any event, the objective video evidence supported by Mr. Tretiakov's testimony proves that the process server did not state his name nor did he offer to deliver the papers[;] [h]e merely put the papers on Mr. Tretiakov's doorstep."[35] The Court is not so convinced. The video evidence fails to foreclose the possibility that some conversation between Tretiakov and the process server occurred at a time or place not captured by the footage, which is only seconds long and shows only the front door of the home. For example, it is certainly plausible that the process server made contact with Tretiakov (either at or away from the front door) who refused service, briefly left to obtain his phone or direction from a superior, and returned shortly thereafter to leave the documents and take the photo. Defendant has not requested an evidentiary hearing or otherwise suggested that it has additional evidence in support of its submitted version of events beyond what has been provided to the Court.

Based on the above analysis, the Court finds that Defendant has not shown by clear and convincing evidence that service was not effectuated as provided in the Affidavit of Service submitted by Plaintiff. The Court accordingly finds that service was effectuated in compliance

---

[32] *Classic Cabinets*, *Inc. v. All Am. Life Ins. Co.*, 1999 UT App 88, ¶ 13, 978 P.2d 465.

[33] *Express Recovery Servs.,* 2012 UT App 296, ¶ 5 (internal quotation marks and citation omitted).

[34] *Kenny v. Rich*, 2008 UT App 209, ¶ 33, 186 P.3d 989.

[35] Docket No. 13, at 5.

with Utah Rule of Civil Procedure 4(d)(2)(E) on December 10, 2025, which started the clock on the 30-day deadline to file for removal.

Defendant next argues that Plaintiff "is estopped from asserting that service was effective any sooner than January 8, 2026," based on its counsel's representations that the answer to the Complaint was due on February 9, 2026.

> [Utah's] caselaw requires proof of three elements for equitable estoppel: first, a statement, admission, act, or failure to act by one party inconsistent with a claim later asserted; next, reasonable action or inaction by the other party taken or not taken on the basis of the first party's statement, admission, act or failure to act; and, third, injury to the second party that would result from allowing the first party to contradict or repudiate such statement, admission, act, or failure to act.[36]

In support of the first element, Defendant asserts that Plaintiff's counsel made two statements, prior to removal, requesting that Defendant's answer be filed by February 9, 2026. The first of these statements was made in a state court filing titled "Motion to Verify Service upon DRS," wherein Plaintiff represents the following:

> The principal office and registered agent address of DRS is fictional despite it continuing to be reported to the California Secretary of State. Service was attempted at said office, and the residents of said office space had been there over two years and had never heard of DRS or its owners. As Tretiakov is the CEO, service was then effectuated at Tretiakov's home and followed up with a Fed Ex containing a full copy of the Complaint and its exhibits.
>
> We now ask the Court to verify that service has been effectuated upon USA Debt Recovery Solutions as it has now been received by Tretiakov no less than three times over. The date of delivery of the follow up Fed Ex was January 8, 2026, and we ask the Court to find that DRS/Tretiakov has been served as of that day. This gives DRS until February 9, 2026 to file its Answer or responsive pleading.[37]

The second statement is a reference to the Motion to Verify Service in an email exchange between Defendant's and Plaintiff's counsel, wherein Plaintiff's counsel responded to a request

---

[36] *Youngblood v. Auto-Owners Ins. Co.*, 2007 UT 28, ¶ 14, 158 P.3d 1088 (internal quotation marks and citation omitted) (emphasis omitted).

[37] Docket No. 1, at 45 (underline added).

for extension by stating: "Read the Motion. We are asking the Court to hold DRS to the answer deadline of Feb. 9."[38] Notably, the email exchange also includes Plaintiff's counsel's unequivocal position that "service was effectuated at Mr. Tretiakov's residence with follow-up by FedEx."[39]

Defendant argues that the statements underlined above requesting a February 9, 2026 answer deadline, "are contrary to its current position that service happened on December 10, 2025."[40] However, reading these statements with their surrounding context makes clear that Plaintiff's counsel never wavered from their position that service was effectuated on December 10, 2025. Plaintiff's February 9 answer request is therefore not inconsistent with its current position regarding the date of service. Instead, the February 9 deadline request appears to be an attempt to move the case along by avoiding litigating the sufficiency of the December 10 service. The Court finds that agreeing to a particular Answer deadline is not the same as agreeing to the date of service, particularly where, as here, the date of service clearly remained in dispute.

Even if the Court agreed with Defendant that Plaintiff's submitted answer deadline is inconsistent with its current position, the Court finds that Plaintiff's reliance on such is unreasonable. An agreement to an answer deadline is not the same as an agreement not to contest the timeliness of other filings. Notably, in the email exchange between the parties' counsel, Defendant's counsel does not mention a possibility of removal such that they could reasonably rely on or interpret any statement by Plaintiff's counsel to assure that Plaintiff would not challenge removal as untimely. Plaintiff's counsel consistently made clear that they believed service was first effectuated on December 10, 2025, and disputed the basis of Defendant's

---

[38] Docket No. 13, Ex. B, at 1 (emphasis added).

[39] *Id.* at 3.

[40] Docket No. 13, at 7.

assertions that it was not. Further, the parties are engaged in an adversarial proceeding. Based on these facts, the Court finds Defendant's purported reliance on Plaintiff's statement regarding an answer deadline as an agreement not to contest the timeliness of removal is unreasonable. Plaintiff is therefore not estopped from asserting a timeliness argument in support of its Motion to Remand.

Because service was effectuated on Defendant on December 10, 2025, and because Plaintiff is not estopped from asserting so, the Court finds that Defendant's February 9, 2026 Notice of Removal was untimely. To the extent any of the above findings are a close call, the Court again notes the Tenth Circuit's directive that "[a]ll doubts are to be resolved against removal." Therefore, because "[t]he thirty-day time limitation is mandatory and strictly construed,"[41] the Court will remand the case to the First Judicial District of Utah, where it was originally filed.

## III. CONCLUSION

It is therefore

ORDERED that Defendant's Motion to Remand (Docket No. 7) is GRANTED. It is further

ORDERED that this matter is remanded to the First Judicial District of Utah.

DATED this 22nd day of September, 2026.

BY THE COURT:

Ted Stewart
United States District Judge

[41] *Chavez*, 15 F. Supp. 2d at 1120.